IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Keith Ritz, et al., | Case No. 3:07 CV 3716 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| City of Findlay, Ohio, et al., | |
| Defendants. | |

This matter is before the Court on the Motion for Summary Judgment (Doc. Nos. 32-33) of Defendants City of Findlay, Findlay City Planning Commission ("Commission"), Mayor Anthony Iriti, and Commissioners James Stasciak, Thom Hershey, Tom Joseph and Joseph Opperman (collectively, "Defendants"). Plaintiffs Keith Ritz, Redwood Management Company ("Redwood"), Steve Kimmelman and Findlay Two, LLC (collectively, "Plaintiffs") oppose the Motion (Doc. No. 49), and Defendants have replied (Doc. No. 52). For the reasons stated below, Defendants' Motion is denied.

## BACKGROUND

Redwood is a real estate company owned by Ritz and Kimmelman specializing in developing and managing apartment complexes throughout Ohio. In late 2005, Redwood sought to develop an apartment complex in Findlay, Ohio. Specifically, Redwood wanted to purchase approximately 10.25 acres of land at 1950 Fostoria Avenue in Findlay ("1950 Fostoria"). A Purchase Agreement was executed on October 17, 2005 by Paul and Linda Ballinger, whose family partnership owned the property, and Keith Ritz, who acted on behalf of Redwood. Section Two of the Purchase Agreement states:

> Seller understands that in order for Buyer [Redwood] to develop the Property it is necessary, and this transaction is contingent upon, Buyer obtaining, to its sole satisfaction and in its sole discretion, the necessary final governmental approvals for the development and construction of Buyer's proposed residential development on the Property, . . . (Doc. No. 34, Ex. A., p. 4.)

To advance the purchase, Ritz hired Todd Jenkins, a civil engineer, who prepared a site plan application ("site plan" or "application") for 1950 Fostoria, listing Ritz as the "owner" (though title to the property had not yet transferred). This site plan was filed with the Commission on November 4, 2005. The Commission was comprised of Mayor Anthony Iriti and Commissioners James Stasciak, Thom Hershey, Tom Joseph, and Joseph Opperman (collectively, "Commissioners"). The Commission is charged with administering all regulations under the Findlay Municipal Code related to planning and zoning. Around the same time the site plan was filed, Jenkins sought a meeting with Mayor Iriti to review the plan and address any concerns. However, Jenkins was told by Iriti and Stasciak "there was no need for a meeting to discuss the project" because "Findlay did not need any more apartments" (Doc. No. 43, Ex. J-2, Tr. pp. 42-43).

At the time the Purchase Agreement was executed, 1950 Fostoria was zoned B-2, or General Business, and could be used for residential purposes. However, on November 14, 2005, ten days after Ritz filed the site plan, the Findlay City Council enacted an emergency order to remove residential uses for land zoned as business districts. Ritz formally presented the site plan at a Commission meeting on December 8, 2005. The Commission denied his application because it incorrectly listed Ritz as the "owner" of the real property.

Ritz appealed the Commission's decision to the Hancock County Court of Common Pleas. In July 2006, Judge Routson held "the evidence overwhelmingly establishes that the [Commission] acted illegally, arbitrarily, and capriciously when it denied Ritz's site plan application based solely

upon his failure to include the name of the real property owner on the face sheet of the site plan application" (Doc. No. 45, Ex. K, p. 15). Judge Routson specifically found the Commission's powers were limited in scope and could consider only those matters included in Findlay City Ordinance 1181.04(d)[1] and held the Commission "may then approve, modify, or if appropriate, reject the site plan if it is non-conforming," but "[t]he ordinance does not support the [Commission's] contention that it has the authority to disapprove a site plan application based upon the failure of the applicant to list the real property owner" (Doc. No. 45, Ex. K, pp. 10, 11).

The case was remanded with instructions for the Commission to review the application within thirty days, and to base its decision on the information provided at the December 8 meeting and under the zoning classifications in existence at the time the application was filed on November 4.

Plaintiffs presented their site plan to the Commission for the second time on August 10, 2006. After substantial discussion, Iriti moved for approval of the site plan subject to ten conditions. However, the Commission deadlocked at 2-2 and the plan was not approved. Ritz subsequently filed a motion to approve the site plan before Judge Routson who denied the motion, finding the court

---

[1] Findlay City Ordinance 1181.04(d) states:
> In the process of reviewing the site plan, the Planning Commission shall consider:
>> (1) The location and design of driveways providing vehicular ingress to and egress from the site, in relation to streets giving access to the site, and in relation to pedestrian traffic.
>> (2) the traffic circulation features within the site and location of automobile parking areas; and may make such requirements with respect to any matters as will assure:
>>> (A) Safety and convenience of both vehicular and pedestrian traffic both within the site and in relation to access streets.
>>> (B) Satisfactory and harmonious relationships between the development on the site and the existing and prospective development of contiguous land and adjacent neighborhoods.
>> (3) The proposed method of surface drainage control, including the methods for stormwater retention and erosion prevention.

3

lacked authority to fashion the remedy requested. However, the court cautioned the Commission that it had not followed the court's earlier instructions on remand.

Ritz then filed a motion to show cause asking Judge Routson to order the City of Findlay and the Commission to appear and explain why they should not be held in contempt for failing to comply with the court's earlier order. Before Judge Routson could rule on this motion, the Commission, at an April 12, 2007 meeting, approved the site plan, now subject to fourteen conditions.

Plaintiffs next allege that, after approving the application, Iriti advised them that the City would soon be annexing approximately 230 acres of land along Route 212, and if Plaintiffs were willing to forego their lawsuit, the City would allow Plaintiffs to purchase and develop approximately 35 acres of this property. Plaintiffs considered Iriti's offer, but were thwarted again when the City zoned the land single-family residential property, thereby precluding development of an apartment complex.

Plaintiffs consequently refocused their efforts to develop 1950 Fostoria. Ritz and Kimmelman formed Findlay Two, LLC in May 2007, and in August 2007 the Ballinger Family Partnership transferred 1950 Fostoria to Findlay Two in a deed signed by Paul Ballinger.

Plaintiffs filed the instant action in December 2007 bringing four claims: (1) violation of procedural due process (Section 1983); (2) violation of substantive due process (Section 1983); (3) violation of equal protection (Section 1983); and (4) state-law tortious interference with business relationships.

Defendants' Motion for Summary Judgment sets forth a threshold argument that Plaintiffs lack standing to pursue their claims because Paul and Linda Ballinger were without authority to sell

1950 Fostoria. Defendants also argue they are entitled to qualified immunity against Plaintiffs' Section 1983 claims, as well as immunity against the state-law tortious interference claim.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Civil Rule 56(c). The party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Federal Civil Rule 56(e)).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**DISCUSSION**

**Plaintiffs' Standing to Bring Claims**

Defendants' primary argument is that Plaintiffs lack standing to bring their claims. The constitutional minimum standing requirements include: (1) injury in fact, (2) causation, and (3) redressability. *ACLU v. Nat'l Sec. Agency*, 493 F.3d 644, 659 (6th Cir. 2007). "'Injury in fact' is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.'" *Id.* (citation omitted).

In addition to constitutional standing requirements, Plaintiffs' claims must fall within the "zone of interests to be protected or regulated by a statute or constitutional guaranty in question." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1992). Plaintiffs must assert their own legal rights and interests rather than claiming third-party rights or interests. *Warth v. Seldin*, 423 U.S. 490, 499 (1975). Claims must be more than generalized grievances. *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007).

Defendants argue Plaintiffs have no interest in 1950 Fostoria because Paul Ballinger could not legally execute the Purchase Agreement, as the property was titled in the name of Ballinger Family Partnership. Plaintiffs concede Ballinger Family Partnership was not the property owner at the time of the Purchase Agreement's execution, but argue that Paul Ballinger, as the General Partner of Ballinger Family Partnership, had the authority to enter into the Purchase Agreement on behalf of his Partnership (Ballinger Aff., ¶¶ 3-4; *see also* Resolution Adopted by the Members of Ballinger Family Partnership, Ex. C, Doc. No. 50).

The Ballinger Affidavit and Resolution support that Paul Ballinger did, in fact, have the authority to transfer 1950 Fostoria to Plaintiffs. Furthermore, R.C. § 1775.09(A)-(B) states:

6

> (A) Where title to real property is in the partnership name, any partner may convey title to such property by a conveyance executed in the partnership name; but the partnership may recover such property unless the partner's act binds the partnership under division (A) of section 1775.08 of the Revised Code, or unless such property has been conveyed by the grantee or a person claiming through such grantee to a holder for value without knowledge that the partner, in making the conveyance, has exceeded his authority.
>
> (B) Where title to real property is in the name of the partnership, a conveyance executed by a partner, in his own name, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under division (A) of section 1775.08 of the Revised Code.[2]

Paul Ballinger executed the 1950 Fostoria Purchase Agreement as an agent of the Ballinger Family Partnership, and both the Partnership Resolution and R.C. § 1775.09(A)-(B) support the validity of the property transfer.

Thus, the question becomes whether this property interest is sufficient to create a legally recognized property right that, if violated, rises to the level of "injury in fact." Ohio law is determinative on this point. *See DiLaura v. Ann Arbor Charter Twp.*, 30 F. App'x 501, 506-07 (6th Cir. 2002); *rev'd on other grounds*, 471 F.3d 666 (6th Cir. 2006) (applying state zoning law in a Section 1983 action to determine whether plaintiffs' claims were legally protected).

Ohio law grants standing to challenge an administrative order (e.g., a decision of a city planning commission) to anyone "directly affected" by the decision. *Schomaeker v. First Nat'l Bank*, 66 Ohio St. 2d 304, 311-12 (1981). Ohio courts have found that when a party:

---

[2]

R.C. § 1775.08(A) states:
> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

7

> . . . has an option to purchase the particular property in question but does not own it, such party is "directly affected" by the administrative agency's decision and has standing to bring an appeal from that decision. Further, once a properly initiated administrative proceeding is concluded with a final decision, a party who only holds a contract to purchase the subject property but is adversely affected by the order may bring a direct appeal pursuant to R.C. 2506.

*Dayton Hudson Corp. v. Washington Twp. Bd. of Trustees*, Nos. CA16691 & CA16707, 1998 Ohio App. LEXIS 362, at *22 (Ohio Ct. App. Feb. 6, 1998) (citations omitted).

Plaintiffs (1) had a contingent agreement to purchase 1950 Fostoria, (2) actively participated in the administrative process, and (3) had a pecuniary interest in the property. They were clearly "directly affected" by the Commission's decision to deny their site plan and therefore have standing to challenge the Commission's administrative orders. Defendants' arguments to the contrary are wholly without merit.

**Section 1983 Claims**

Under 42 U.S.C. § 1983, redress is available for "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" by any person "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Thus, a threshold determination in establishing a valid Section 1983 claim is the existence of a constitutionally protected interest. Plaintiffs allege Defendants violated their substantive due process, procedural due process, and equal protection rights.

Defendants argue Plaintiffs lack any constitutionally protected interest in 1950 Fostoria and therefore cannot establish either their substantive due process or procedural due process Section 1983 claims. Defendants' arguments rest primarily on *Triomphe Investors v. City of Northwood*, 49 F.3d 198 (6th Cir. 1995). In *Triomphe*, the Sixth Circuit held plaintiff could not establish a violation of substantive due process because he was unable to "prove that the [board of zoning appeals] did not

8

have the discretion to deny [plaintiff's] use of the land as a condominium complex if he complied with certain minimum, mandatory requirements. If the [b]oard had [this discretion], then [plaintiff] would not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan." *Id.* at 202 (citations omitted).

Here, Defendants argue the Commission retained discretion at all times to disapprove Plaintiffs' application, thereby preventing Plaintiffs from establishing the requisite "legitimate claim of entitlement" or "justifiable expectation" needed to establish a property interest for the purposes of Section 1983.

Plaintiffs argue the plain language of the ordinance indicates a plan submission may *only* be rejected if it is nonconforming. Findlay City Ordinance 1181.04 provides the Commission with a restrictive list of matters it "shall consider," and once the Commission considers these matters, it has the authority to approve, approve with conditions, or "if appropriate, reject the site plan submission *if it is nonconforming*" (*id.* at 7 (emphasis added)). In contrast, the statute at issue in *Triomphe* explicitly stated "[a] special use permit *may* be granted in any of the established zoning districts." 49 F.3d at 203 (emphasis in original) (citation omitted). The *Triomphe* court predicated its holding on the discretion reflected with the word "may" to "undercut any argument that the language in the zoning regulations vested in plaintiffs an entitlement to the special use permit being issued once the four factors in § 1266.13 were fulfilled." *Id.* (citation omitted). Findlay City Ordinance 1181.04 used the word "shall" which provides a mandate that the Commission must approve conforming applications, either with or without conditions. Indeed, Judge Routson's opinion specifically held the Commission overstepped its bounds in denying Plaintiffs' application on a

9

technicality: namely, the failure to list the real property owner. And the Commission took no appeal from that finding.

Plaintiffs further distinguish the facts in *Triomphe* from the instant matter in that *Triomphe* concerned plaintiffs seeking a "special-use permit" as opposed to seeking Commission approval to use property for its permitted use. As Judge Routson stated, "[i]t is the function of a planning commission to determine conformity with existing zoning laws, not to modify the laws themselves, otherwise property could be re-zoned by administrative fiat" (Doc. No. 45, Ex. K, p. 10). Because Plaintiffs' site plan conformed in all other respects, Plaintiffs had a justifiable expectation of its approval, giving rise to a constitutionally protected property interest that meets the threshold requirement for their Section 1983 substantive due process and procedural due process claims. Defendants are not entitled to summary judgment on these claims, as there remain genuine issues of material fact regarding whether Defendants' actions violated Plaintiffs' substantive due process and procedural due process rights.

Defendants' sole argument for summary judgment on Plaintiffs' equal protection claim is based on Plaintiffs' lack of standing to bring this claim. As this Court has already rejected these standing arguments, Defendants' Motion is denied on this claim as well.

**Tortious Interference with a Business Relationship**

Plaintiffs assert a state law claim of tortious interference with a business relationship. The elements of this claim comprise: "(1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 604 (2002).

10

Defendants argue (1) Plaintiffs lack standing; (2) Plaintiffs have not shown any prospective business relationships were affected by Defendants' actions; and (3) there is no proof Defendants' actions were malicious or intentional. The validity of Plaintiffs' standing has already been addressed above; Plaintiffs have established that they entered into a valid Purchase Agreement with Paul Ballinger for 1950 Fostoria.

As to prospective business relationships, this tort "does not require proof of a contractual relationship [and] generally occur[s] when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (*citing A & B-Abell Elevator Co., Inc. v. Columbus/Central Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (1995)). Defendants' actions caused Plaintiffs to delay their business development for nearly two years, resulting in increased costs of construction and souring relationships with suppliers and vendors (Ritz Aff., ¶ 6). This delay may also have impaired Plaintiffs' ability to obtain permanent financing, resulting in lower overall returns on capital and possibly precluding future business opportunities. *Id.* Thus, Plaintiffs have on this record established a genuine issue of material fact regarding the impact of the Commission's actions, although more specifics would be needed at trial to establish monetary damages.

There also is a genuine issue of material fact as to Defendants' malice. Defendants' outright disapproval of the site plan was triggered by pushing through a last-minute zoning ordinance change. Furthermore, Plaintiffs' site plan engineer, Todd Jenkins, was informed by Mayor Iriti and Commissioner Stasciak of their intent to disapprove the plan a month prior to the formal presentation at the December 2005 Commission meeting. Judge Routson found Defendants' conduct "pretextual

in nature" (Doc. No. 45, Ex. K, p. 11). These cloak(less) dagger maneuvers by the Commission are sufficient to create a genuine issue of material fact supporting the tort claim for intentional interference with Plaintiffs' business relationships.

**Immunity**

Defendants argue in the alternative that they are entitled to qualified immunity on Plaintiffs' Section 1983 claims and immunity under state law on Plaintiffs' tortious interference claim. To establish a qualified immunity defense, Defendants must show that they are "government officials performing discretionary functions" that

> do[] not violate clearly established statutory or constitutional rights of which a reasonable person would have known. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) (internal citations omitted).

This Court has determined that Plaintiffs have presented a constitutionally protected right via their interest in the 1950 Fostoria property, guaranteed under the U.S. Constitution's Fourteenth Amendment (prohibiting states from "depriv[ing] any person of life, liberty, or property without due process of law"). This right was clearly established at the time of the Commission's actions.

Because the Commission acted outside the bounds of objective reasonableness in denying Plaintiffs' application, Defendants are not entitled to assert a defense of qualified immunity against Plaintiffs' Section 1983 claims.

On the state law claim, the Commission is a political subdivision and therefore generally immune from claims of intentional interference with business interests. R.C. § 2744.01-03. However, R.C. § 2744.03(A)(6)(a)-(b) precludes sovereign immunity if "[t]he employee's acts or

omissions were manifestly outside the scope of the employee's employment or official responsibilities," or "with malicious purpose, in bad faith, or in a wanton or reckless manner." Judge Routson's decision has already determined Defendants acted with "ill intent" in their treatment of Plaintiffs' application, and the record before this Court supports that conclusion. Therefore, this immunity claim fails as well.

## CONCLUSION

This Court denies Defendants' Motion for Summary Judgment on all grounds.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                             JACK ZOUHARY
                                             U. S. DISTRICT JUDGE

                                             July 6, 2009